Smith, J.
It is claimed on behalf of the plaintiff in error, that the trial court erred, 1st, in receiving and rejecting certain evidence over the objection and exeeption of his counsel. 2nd, in the *539 charges given to the jury, and in the refusal of a charge asked by him. 3rd, in refusing to grant a new trial, on the ground of certain misconduct of the prosecuting attorney during the trial of the case, which operated greatly to his prejudice; and 4th, in refusing to sustain the motion for a new trial on the ground that the verdict was manifestly against the weight of the evidence.
We have examined with care the charge given to the jury, and are of the opinion that it is not open to the objections urged against it; but it seems to us to correctly state the law applicable to the case, and that it was entirely fair to the defendant. Special charge No. 11 (Ex. “A”), which counsel for defendant asked to be given to the jury, but which the court refused to give, in the first paragraph or sentence thereof reads as follows : <e If you find that the defendant honestly believed himself to be in danger of life or bodily harm, and acted in self defense, yet did not have reasonable ground to so believe, and acted as was not reasonable from his standpoint to act, but carelessly and negligently as to appearances, his crime, if any, is manslaughter, and you must acquit him of the crime of murder in the -first and second degree.”
If this sentence had used the word “ great ” or “ grievous,” before the words “ bodily harm,” we think it would have been correct as a legal proposition, and we think this was substantially given in the charge of the court. But as here asked, it was connected and coupled with another proposition, in effect this —that the burden loas'on the state, to show that the defendant exercised a careless and negligent judgment as to the appearances of danger to himself, and that unless this was shown by the state, the defendant- should be acquitted. We are of the •opinion that the defendant was not entitled to this charge as a whole as it was asked. The latter part of it is not the law of this state; but the settled rule is, that when the killing by the defendant is shown, and no sufficient ground therefor appears on such evidence, and he seeks to justify it by showing that it was done in self defense, the burden is upon him to show, by *540 a preponderance of the evidence, all the facts necessary to excuse him — and that to entitle him to an acquittal, he must make it appear that he did not do it in the exercise of a careless and negligent judgment, but rather under such circumstances as would make it appear thathe believed,and had reasonable grounds for the belief, that he was in danger of death or great bodily harm from his assailant.
Second — As to the claim that the verdict should have been set aside on the ground of misconduct on the part of the prosecuting attorney in his management of the case, we have but little to say, as we think the question is not properly made upon the record. It is apparent from the affidavits filed by the several counsel, that the case was not tried by them with that good feeling which should characterize those engaged in the administration of the law, and that much of a personal and unpleasant character took place between them during the trial. The claim is made in the affidavits filed by counsel for defendant that the prosecuting attorney, in his closing argument to the jury, greatly misstated the evidence and the law of the case, aud that the court, though frequently called upon by the counsel for the defendant to do so, refused to interfere to prevent or correct this, but over the exception of defendant’s counsel allowed him to proceed, and that the prosecuting attorney otherwise unfairly argued the case. These allegations are substantially denied by’the affidavits of the prosecuting attorneys, and there is no finding by the court as to any of these matters, and nowhere in the bill of exceptions, except in the affidavits of defendant’s counsel, does it appear that there were any exceptions taken to the'action of the prosecuting attorney, or to any ruling of the court made in regard thereto ; and the fact that such exceptions were taken is also denied by the affidavits on the part of the state. On this state of fact we can not say that there was any misconduct as claimed. The trial court has practically held that there was not, and that no exceptions were taken by defendant’s counsel, and we can not interfere with the judgment on this ground.
*541 Third — Nor can we do so on the ground that the verdict was so manifestly against the weight of the evidence, as to require us to set it aside. As to what took place at the time of the homicide, the evidence was exceedingly contradictory. If that on the part of the state was true, it would seem manifest that the killing of Smith by the defendant was malicious and intentional, and utterly without excuse. If that of the defendant and several of his witnesses is to be believed, there is strong ground to think that at the time of the homicide, the defendant was acting in the defense of himself against a dangerous attack, made on him by a dangerous man with a deadly weapon. The jury have found the issue thus made against the defendant, and we can not consistently with the rules of law, say that they were manifestly wrong in this.
Fourth — Were those errors in the action of the trial court in its rulings as to reception or rejection of evidence, prejudicial to the defendant? Wo are of the opinion that such was the fact. One of the matters complained of, is this : As has been stated, the defendant, while admitting that he killed Smith, claimed that it was done in the defense of himself, against a murderous attack upon him by the deceased with a knife. He had also offered evidence tending to show that Smith was a violent and dangerous man, and that this was know'n to him (the defendant) at the time. It further appeared that about an hour before the homicide, the deceased and one Radford had an altercation at the boarding house and saloon, of which the defendant was the bar-keeper, and of which in the absence of the proprietor, he had full charge, and that he had attempted to stop the quarrel between Radford and Smith, and which the latter resented. It further appeared that Smith had followed Radford from the dining room, through the bar room, to the street, but it had not been shown that he was pursuing him with a knife in his hand, or that Turner was present, and saw it. The defendant then introduced a witness, Hiolcs, who testified that he was . in the bar room when Smith passed through, following Radford, and the *542 bill of exceptions shows the following to have occurred at the trial (page 587). Hicks was asked this question by defendant’s counsel:
“ Q. Did you see Smith draw a knife at that time—
(Objected to by counsel for the state.)
The Court — Unless you can show this action was towards Turner, I will sustain the objection.
(Counsel for the defendant excepts.)
Mr. Diolcson — I expect to show, if this witness were allowed to answer, that he would state that in Turner’s presence, while Turner was behind the bar, that while Rad-ford was running toward the saloon door, Smith drew a knife from his pocket and ran after Mr. Radford.”
We think this evidence should have been received. It was almost a part of the res gestee, if not strictly so, but was certainly competent for the purpose of showing the conduct and character of Smith as a dangerous man — ^ono who on slight provocation would attack another with a dangerous weapon, and also to show that very shortly before the homicide he had a knife, (the state having sought to show that he had none when he was killed), and that this pursuit of Rad-ford with the knife was in the presence of the defendant, who would thus have knowledge of the fact that he had a knife, and that he was a vicious and dangerous man, both of which facts were very material to his defense.
It is objected by the counsel for the state that this fact appears by the testimony of another witness, viz.: the defendant himself, and thus that the exclusion of the evidence of this witness could not have been prejudicial to the defendant; but this is not so. No other witness testified to precisely the same thing, and even if he did, this is not to prevent the defendant from corroborating, by a disinterested witness, his own evidence, or that of another. It is also objected that the exception was not properly made or saved — that after the question had been put and overruled and exception taken, and Mr. Dickson had stated what he proposed to prove in answer *543 to the question, he did not again ask a ruling by the court on the point. This we think was unnecessary, and not the usual practice. If the statement showed that- the evidence proposed was competent, the court should have then admitted it.
Evidence of the same character (as we suppose), was sought to be obtained from Henry Barlage, on page 509. He was asked what Smith and Radford were doing in the bar-room after the trouble between them in the dining-room. This question the court would not allow to be answered, and defendant’s counsel excepted. But as no statement seems to have been made as to what answer he expected, in strictness the ruling cannot be held to be prejudicial to the defendant.
Fifth — Kuhlman, a witness called for the state, had testified that immediately after the homicide, Turner had said, “ I have blood in my eye.” No other of the many persons said to have been present at the time, heard any such expression— and the defendant denied that he had said any such thing. On cross-examination, Kuhlman was asked whether he had testified as a witness on the hearing before the coroner, and answered that he had. He was then asked if he had testified there that Turner had used any such language. The counsel for the state objected to the question, and the court refused to allow it to be answered, and exception was duly taken. We think the question was a proper one, and should have been answered. Evidently it was intended to test the credibility of the witness by ascertaining whether in his evidence as to the same transaction, given on a former examination, and when the matter was fresh in his recollection, he had made a statement so important as this, as tending to show the state of mind, purpose and spirit of the defendant at the time of the killing; or whether he had said nothing about it; and in all probability, if he had said that he had so testified, to offer evidence in contradiction, and thus to impeach him. He was allowed to say afterwards that he- had probably told some other person so at some other time, but did not name him. *544 This did not avail to cure the error, or to afford the defendant any opportunity to offer impcaching evidence.
Sixth — Ochsle, a witness for defendant, among other things, had testified (page 521) that he had known the deceased for four or five months before his death; that he saw him frequently, almost every day, while he was out with his wagon, and at this saloon. Sometimes at night, and sometimes during the day. That he saw him every day or two, and occasionally talked with him. He was then asked, whether,, from his knowledge of Smith, he was able to say what his character was as a vicious, dangerous man. The question was objected to by the counsel for the state, and the objection sustained, and counsel for the defendant stated that he expected to prove that the witness would say that he did know the character of Smith in this respect, and excepted to the ruling. He was then asked by defendant’s counsel what was Smith’s character as a vicious and dangerous man; the statement being made by counsel, that the witness would answer that he was. The question was not allowed to be answered, and exception was taken. The statement is made in the bill of exceptions that the objection was sustained, not on the ground of want of form, but for the reason that the witness was not competent to testify as to that matter.
We think this ruling was too strong against the defendant. It seems to us the witness had qualified himself to give an answer to the question — and the weight of the evidence was a question for the jury. It appears, too, that the court after-wards, over the objection and exception of defendant’s counsel, allow'ed the state to offer the testimony of Granville Williams, called in rebuttal, as to Smith being a man of peaceable character, and his evidence shows that he had known him but one month, and it appears to us from what he said, that he was not as well qualified as was Ochsle, to testify on this subject. The same rule should have been applied to both witnesses.
W. L. Dichson, and J. A. Campbell, attorneys for plaintiff in error.
J. C. Schwartz, Prosecuting Attorney, and D. T. Wright, Assistant Prosecuting Attorney, for the state.
We are of the opinion then, that the defendant is entitled to a new trial, and it will be awarded.